**EXHIBIT 1**

ORIGINAL
1-18-07

- - - - - - - - - - - - - - - - - - - - X
In the Matter of the Arbitration between

MICHAEL FISHMAN, PRESIDENT, LOCAL 32BJ,           **OPINION AND AWARD**
SERVICE EMPLOYEES INTERNATIONAL UNION             Case # 23297

       - and -

MILLENIUM TOWER
C/O BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC

       - and -

REALTY ADVISORY BOARD ON LABOR RELATIONS, INC.
- - - - - - - - - - - - - - - - - - - - X

**APPEARANCES:**

| | |
|---|---|
| For the Union: | Associate General Counsel |
| | By: Elizabeth Baker, Esq. |
| | |
| | Kevin Stavris, Business Agent |
| | |
| For the Employer: | George Skintej, Property Manager |
| | Pablo Rivera, Handyman |
| | David Morales, Supervisor |
| | |
| For the Realty Advisory Board: | Michael Rivituso, Esq. |
| | |
| Employee: | Gilberto Polanco, Jr., Grievant |
| | |
| Premises: | 101 West 67th Street |

- - - - - - - - - - - - - - - - - - - -

A dispute having arisen between MILLENIUM TOWER C/O BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC and the Realty Advisory Board, Inc. (hereinafter referred to as the "Employer") and Local 32BJ, Service Employees International Union (hereinafter

RECEIVED
JAN 2 2 2007
Contracts & Complaints Dept.

1

referred to as the "Union"), concerning property at 101 West 67th Street, the same was submitted to the Undersigned for arbitration and Award pursuant to the pertinent provisions of the then current Collective Bargaining Agreement between the parties at hearings scheduled for May 15, July 24, September 14, November 13, 2006 and January 4, 2007.

In a letter to the Office of the Contract Arbitrator dated March 15, 2006, the Union alleged the following complaint on behalf of Gilberto Polanco, Jr. ("Grievant"), and the same was by mutual consent of the parties submitted to the Undersigned for adjudication and Award.

> "The above member, employed at the above building as a concierge for six years, unjustly terminated, effective February 17, 2006.
>
> We are claiming reinstatement to his prior position with full back pay, benefits, seniority, contributions to the benefit funds lost by his unjust discharged and management be cited for harassment."

At the Hearing, full opportunity was afforded to the parties to present evidence and argument, and to examine and cross-examine witnesses. Witnesses were duly sworn.

At the conclusion of the Hearing, the parties made closing arguments, and indicated that they had presented their

respective cases in full.

The hearing was considered closed on January 4, 2007/

## ISSUE

Whether there was just cause

for the discharge of the Grievant.

If not, what shall be the remedy?

## FINDINGS

The following findings are not in dispute and/or are based upon the substantial record in this case:

1) Grievant Gilberto Polanco, Jr. had been employed as a concierge at Millenium Tower, 101 West 67th Street, New York, New York for six (6) years at the time of his termination, effective February 17, 2006.

2) The reasons given by the Employer for the discharge are contained in a letter dated February 17, 2006 from Property Manager George Skintej to the Grievant (Employer Exh.2 with attachment), which reads, in pertinent part, as follows:

> It has been brought to my attention that you have written accusatory statements in the public building log book. The statement includes that Mr. David Morales and Mr. Pablo Rivera are intentionally causing more damage in apartments in order for the owner to collect more insurance money (see attached document). In addition, you are continuously having communication issues with **ALL** staff members, and you abandoned your post on Friday, February 16 at 6:35a.m. leaving Mr. Mariam Anghel in the building by himself.

3

> In your voice message dated Sunday February 12, 2006, you stated that you do not want any staff members to speak to you in regards to "anything." This specifically referred to Mr. Tierney's question about a clinic day that you were supposed to use. Instead of giving him a calm explanation you became irritated and "launched into a tirade." Communication is a key factor to running a high end condominium. You must communicate with your co-workers at all times.
>
> In my letter dated February 2, 2006, I warned you that further infractions of buildings rules and regulations will lead to your termination and yet you are constantly and continuously disturbing the work flow of the condominium.
>
> I'm regretfully informing you that you are terminated from your duties at 101 West 67th Street.

3) Grievant had received a prior written warning from Account Executive Maria Caprano dated April 4, 2003 (Employer Exh.3) which states the following:

> In the past few weeks there have been two separate incidents that caused problems with the staff and complaints from the resident.
> An envelope was left for Pablo Rivera and you opened it and removed money without his authorization. Not only is it improper, but you showed that you are not part of our team. In the last week or two it has been noticed that morale is down and that the staff is uncomfortable about working with you. If the staff cannot function as a team, the building does not run properly.
> You were hired by a resident to care for her pets. After she left there was a disagreement about the money that was left. Instead of waiting, you confronted her daughter which resulted in making the resident uncomfortable to the point of her making a complaint to management. It appears that you have been disingenuous with the staff regarding the monies you have received. At the least this is poor judgment causing aggravation.
> The kind of behavior that you have been exercising will not be tolerated. You have an obligation to the staff to be part of the team and show that you can be

4

> trusted. Also, you have an obligation to all the residents of Millenium Towers, that should be treated with respect and the quality of service expected from a luxury condominium building.
> Further disciplinary actions will be taken including and/or termination of employment if this behavior continues.

4) A <u>Formal Final Official Notice</u> dated February 2, 2006 from Property Manager Skintej (Employer Exh.1) advised the Grievant that the <u>Notice</u> constitutes a last warning, as follows:

> Please be advised that on February 1, 2006 you committed a horrific act of insubordination in the presence of Mr. Kevin Stavris (Union Representative) and myself. As I was trying to explain a payroll error, committed by Mr. David Morales (your direct supervisor) you abruptly interrupted me as I was trying to complete a sentence. You began screaming hysterically toward me using profanity because you believed that I was trying to defend Mr. Morales. Mr. Morales clearly made an error on the payroll worksheet and apologized for his mistake and you were paid in full. I assure you, there is no conspiracy against you.
>
> My reason for sending you home was not to display or show off my authority. It was simply because you needed time alone to calm down.
>
> Your behavior was childish and rude. The sole purpose of the meeting requested by you and the Union was to diplomatically discuss the personal problems you and Mr. Morales are experiencing at work. Clearly, your temper and manner of communication with your direct supervisor needs to improve.
>
> If you ever display that aggressive, disrespectful behavior towards anyone, including myself, I will terminate your employment at 101 West 67th Street Condominium.

>This will be your last warning. Any infraction of building policy will lead to your termination.

**EMPLOYER POSITION**

The Employer maintains that there was just cause for the discharge.

The Employer argues that despite efforts by the Union to minimize what the Grievant did, as well as the record of misconduct, the record establishers the severity of what the Grievant did, and also establishes the credibility of the testimony and other evidence against the Grievant.

The Employer observes that this is not the case of an isolated incident. It contends that the Grievant was not credible, and told half-truths.

For example, the Grievant said that he had not been given prior discipline, but the letter from the Account Executive dated April 4, 2003 demonstrates that the Grievant did have prior discipline.

The Grievant was insubordinate to the Managing Agent who testified that the Grievant was yelling and screaming in the presence of his Union Delegate. The Grievant became "unhinged." This was grounds for discharge.

But the Grievant was not discharged. Instead, he was given a final warning.

6

Grievant demonstrated an extreme disregard for the Rules and Regulations of the building. He was supposed to be representing and serving the building, and exercising good judgment. Instead, he used bad judgment.

Mr. Morales denied saying anything about insurance fraud. If it had been said, it should have been immediately reported to Management.

The Employer proved that the entry in the log book was made after the Grievant had been disciplined. He wanted to get back at his co-workers. The entry was made at 10:30A.M., but there is no date on it. The Grievant went back and put the entry on to try and "get" the other employees.

The Property Manager testified that there had been continuing problems between the Grievant and his co-workers.

On February 16, 2006, the Grievant left. He said he was sick. He testified that he had a doctor's appointment, but never produced any documentation of the visit.

An employee is only supposed to leave if his relief is there.

At 6:45 no one else was there. Ronnie Hayes was not there. He works in another building.

Mr. Anhgel has no axe to grind. He testified that the Grievant left the building at 6:35.

7

The Union argues on behalf of the Grievant that Pablo Rivera took over Grievant's shift. But Pablo is a handyman who comes in at eleven. Yet the Grievant left early anyway.

The Employer asserts that there are at least three good reasons that there was just cause for the discharge: 1) writing false statements in the log book; 2) not reporting alleged insurance fraud to Management; and 3) leaving before his [Grievant's] shift was over without any relief being present.

To infer that because Mr. Morales may have left early does not equate to disparate treatment. It is impossible to ignore the final warning for acting in an irrational and insubordinate manner to the Property Manager.

For all of the aforementioned reasons, the Employer submits that the grievance should be denied.

**UNION POSITION**

The Union counters vigorously on behalf of the Grievant that there was not just cause for the discharge.

The Union argues that the Employer failed to meet its burden of proof in violation of the RAB Apartment House Agreement.

The Union observes that the Grievant is a long-term employee. It contends that the Grievant had no significant discipline prior to February 2006.

The Union disputes the three (3) reasons given by the Employer for the discharge. It maintains that the fact that Grievant left a message for Mr. Skintej; that he wrote in the log book, and that he left early on February 16, 2006 does not constitute just cause for discharge.

The Union asserts that none of these warrants discharge. But even by packaging them together, the Employer does not get to just cause for termination of the Grievant.

The Union maintains that none of these taken together rises to the level required for discharge.

The Union disputes the issue of coverage at the front door on February 16, 2006. The Grievant left early because he was ill.

The Union contends Grievant is a credible witness. It notes that he testified that it was he who authored the entry in the log book. The Grievant does not dispute the facts; he disputes the charges around the perimeter of what happened.

With respect to February 16, 2006, Mr. Morales acknowledged that he may have left without a relief person being present, and the Union charges that that amounts to disparate treatment.

Finally, for all of the above-stated reasons, the Union submits that he grievance should be sustained in its entirety.

## OPINION

The facts necessary for a determination in this case are not in dispute:

1. The serious charges against Grievant's co-workers in the log book should instead have been immediately reported to Management.

    If the charges were entered solely in a belated effort to cause trouble following his having been disciplined, Grievant acted in an irresponsible manner.

    Assuming <u>arguendo</u> that the charges had proven to be true, nonetheless, the log book was not the place to report the charges. Rather, good judgment would have sent the Grievant to Management for immediate action.

2. Grievant testified that he left early because he was ill and had an appointment with a physician. But Grievant never provided any proof of the visit.

3. Grievant left the front door unattended, without any relief person present to provide security for residents in the building. This constitutes a serious breach of security.

Credited testimony by the Property Manager, the Morning Head Shift (Captain) Concierge, the Doorman and Handyman establishes that there was just cause for the action taken by the Employer.

The Grievant failed to exercise good judgment in the performance of his duties, breached the security of residents in the building, and was insubordinate to management.

Having carefully considered the evidence presented, and arguments advanced by the parties, the finding is made that there was just cause for the discharge.

Accordingly, the following **Award** is rendered:

**AWARD**

Grievance denied.

DATE: January 18, 2007

*Marilyn M. Levine*
MARILYN M. LEVINE
Contract Arbitrator

STATE OF NEW YORK:
          SS:
COUNTY OF NEW YORK:

I hereby affirm pursuant to CPLR Sec. 7507 that I am the individual described in and who executed this instrument which is my Award.

DATE: January 18, 2007

*Marilyn M. Levine*
MARILYN M. LEVINE
Contract Arbitrator